IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 17, 2019

## IN RE BRENLEE F.[1]

**Appeal from the Chancery Court for Anderson County**
**No. 16CH8331     M. Nichole Cantrell, Chancellor**

_____

### No. E2018-01498-COA-R3-PT

_____

This action involves the termination of a mother's parental rights to her minor child. Following a bench trial, the trial court found that clear and convincing evidence existed to support the statutory grounds of abandonment by her (1) failure to visit; (2) failure to support; and (3) conduct that exhibited a wanton disregard for the child's welfare. The trial court also found that termination was in the best interest of the child. We reverse the trial court on its finding that the mother abandoned the child by failing to remit support. We affirm the trial court on all other rulings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT, JR., P.J., M.S., joined.

Paige Coleman, Seymour, Tennessee, for the appellant, Olivia F.

Amanda Inman Lowe, Knoxville, Tennessee, for the appellees, Louie and Michele B.

Julianna L. Mason, Knoxville, Tennessee, guardian ad litem for the minor, Brenlee F.

### OPINION

### I.     BACKGROUND

The Child at issue was born out-of-wedlock to Olivia F. ("Mother") in October 2012. The Child's father was later identified as Charles K. In 2014, Mother gave

_____

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

temporary custody of the Child to her mother ("Grandmother"), and a court order was entered evidencing the same. In 2015, Grandmother relinquished custody to Louie and Michele B. ("Petitioners"), who later obtained an order of custody from the Juvenile Court on June 28, 2015. The custody order provided, in pertinent part, as follows:

> That visitation between [the Child] and [Mother] shall be strictly supervised by [Petitioners] at dates and times they designate.
>
> That any party seeking to modify this order shall file a petition with this Court.

Meanwhile, Mother engaged in a lifestyle of drug abuse and was charged with numerous offenses, including shoplifting, theft of a motor vehicle, theft of property, criminal trespassing, forgery, possession of drug paraphernalia, probation violations, contempt of court, and failure to appear. These charges led to multiple periods of her incarceration, the most recent of which occurred from March 30, 2016, through April 25, 2016, and again from August 22, 2016, through September 19, 2016. Petitioners filed a petition to terminate Mother's parental rights on September 19, 2016.[2] Mother executed a voluntary surrender of her parental rights but then rescinded her intent to surrender.

The case proceeded to a hearing on the termination petition on July 20, 2018. Mother provided that she was arrested again in March 2018 and charged with manufacturing, delivery, and resale of a Schedule II drug, simple possession, and failure to appear. She was incarcerated on April 30th and was transported to the hearing from the Anderson County Detention Facility. She claimed she has abstained from drugs since April 30th and had been accepted into a rehabilitation program. She planned to enroll in the program upon her release and stay for at least six months to two years.

Mother agreed that she had not remitted child support to Petitioners during the pertinent time period. She noted that her tax refunds were withheld from her in payment of child support and that she made purge payments, one in June 2016, for back child support. She agreed that she generally maintained employment when not incarcerated and that she gave Grandmother approximately $40 per week for the Child when she was not incarcerated. She explained that she contacted family members in an attempt to acquire Petitioners' phone number but that she was denied information. She acknowledged that she knew where Petitioners lived but did not mail them her support payments. She stated that she had always paid the support to Grandmother and did not realize she was supposed to remit payment through the child support office.

---

[2] They also requested termination of Father's parental rights. He is not a party to this appeal.

Mother testified that she had not seen the Child since 2015. She provided that per the court order transferring custody, her visitation was at Petitioners' discretion. She claimed that her requests for visitation were denied. She admitted that she did not file a petition with the court to secure her visitation rights.

Mother stated that when Grandmother had custody of the Child, she lived with them until she was removed from the home due to her substance abuse. She claimed that she enjoyed an excellent relationship with the Child prior to her substance abuse issues. She did not want to sever her relationship with the Child because she believed that she could be a positive influence in her life if given the chance.

Michelle B. testified that the Child was doing well in their home and had adjusted well after the initial transition into the home. She explained that the Child expressed fear when she was left with a sitter or other family members in her stead. She took the Child to counseling shortly after they obtained custody and stated that the Child still participates in play therapy when their schedule permits.

Michelle B. testified that they had not received any child support payments from Mother or any purge payments from the child support office. She admitted that Grandmother had offered them money but that they declined her offers of payment. She stated that Grandmother never advised them that the money was from Mother for the Child. She also acknowledged that they had declined two requests from Grandmother to schedule a visitation with Mother. She stated that the first request occurred in either 2015 or the beginning of 2016. She explained that they denied the request because they had just received custody and wanted to allow the Child time to adjust in her new home. She stated that they received a second request in February 2016 when Mother had a short period of release between her incarceration and entry into a rehabilitation program. They denied that request because they did not believe it was in the Child's best interest due to Mother's limited availability between periods of confinement and absence of proof that Mother was stable enough to refrain from substance abuse. She agreed that they received two letters from Mother for the Child and one gift for the Child in 2015. She also admitted that they received one request for visitation directly from Mother via Facebook messenger in July 2016. She stated that they did not receive the request in a timely manner to permit the visitation as requested. She denied ever directing others not to provide Mother with their telephone number.

Louie B. confirmed his wife's testimony and described a loving relationship between himself and the Child.

Following the hearing, the trial court granted the termination petition, finding that Mother had abandoned the Child by her (1) failure to visit; (2) failure to support; and (3)

conduct that exhibited a wanton disregard for the Child's welfare. The court also found that termination was in the best interest of the Child. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.    Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment for failure to remit child support pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv).

B.    Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment for failure to visit pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv).

C.    Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment related to Mother's conduct prior to incarceration pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv).

D.    Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i).

## III.    STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process

requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
>
> (2) [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as

supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

## IV. DISCUSSION

### A. & B.

Parental rights may be terminated if the parent has been incarcerated during all or part of the four months immediately preceding the filing of the termination petition *and* has either willfully failed to support or to visit the child for four consecutive months preceding the incarceration. Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv). Here, Mother was incarcerated for part of the four months preceding the filing of the termination petition. In such cases, the "four-month period shall be created by aggregating the shorter periods of nonincarceration beginning with the most recent period of nonincarceration prior to commencement of the action and moving back in time." Tenn. Code Ann. § 36-1-102(a)(iv). As found by the learned trial court, the relevant time period in this case begins on March 23, 2016. The period then concludes on September 18, 2016, the day before the filing of the petition.[3]

A parent's willful failure to support "means the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child." Tenn. Code Ann. § 36-1-102(1)(D).[4] Token support is "support, under the circumstances of the individual case, [that] is insignificant given the parent's means." Tenn. Code Ann. § 36-1-102(1)(B). A parent's willful failure to visit "means the willful failure, for a period of four (4)

---

[3] "The applicable four-month window . . . includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed." *In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014). We reason the same holds true for the start date of a parent's aggregated periods of incarceration.

[4] The legislature has since amended Section 36-1-102(1)(A), effective July 1, 2018, to place the burden upon the parent to establish his or her lack of willfulness as an affirmative defense to the statutory ground of abandonment. The amendment does not apply to this case, filed in September 2016.

consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). Token visitation is "visitation, under the circumstances of the individual case, [that] constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C).

1.

Mother claims that failure to visit was not willful when she lacked the capacity to make any willful decisions as a result of her substance abuse addiction. Mother cites an article in support of her claim that her substance abuse should be likened to someone suffering from a debilitating disease such as cancer, thereby removing her capacity to engage in willful behavior. Petitioners object to this argument, claiming that this argument, along with the supporting article, was not considered by the trial court. We agree with Petitioners that this argument was not considered by the trial court and may not be raised on appeal.

Mother alternatively argues that her attempts at contacting Petitioners were rebuffed and that her requests for visitation were denied. The Supreme Court has held that "a parent who attempted to visit and maintain relations with his child, but was thwarted by the acts of others and circumstances beyond his control, did not willfully abandon his child." *In re A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007) (citing *Swanson*, 2 S.W.3d at 189). However, "[a] parent's failure to visit may be excused by the acts of another only if those acts actually prevent the parent from visiting the child or constitute a significant restraint or interference with the parent's attempts to visit the child." *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009) (citation omitted) (upholding termination when the father did not take court action to secure visitation like the parents in *In re A.M.H.*). The court order transferring custody to Petitioners in this case permitted visitation at the discretion of Petitioners. However, the parties were both advised to petition the court should modification of the order become necessary. Mother only made sporadic requests for visitation during her periods of release and did not petition the court when her requests were denied. With these considerations in mind, we uphold the court's finding of abandonment for failure to visit during the pertinent time period.

2.

The record reflects that Mother failed to remit support during the requisite time period. She again cites her substance abuse addiction as justification for her failure to remit support. This argument was not considered by the trial court. She alternatively claims that her failure to remit support was not willful because she believed her periodic payments to Grandmother were delivered to Petitioners. Further, she made at least one

- 7 -

purge payment during the pertinent time period. Petitioners claim that they did not receive any child support from Mother during the pertinent time period.

"'Failure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide the support, and has no justifiable excuse for not providing the support.'" *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005) (quoting *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 WL 1085228, at *4 (Tenn. Ct. App. May 12, 2004)). Here, the record reflects that Mother attempted to provide support through Grandmother during her periods of employment. Mother explained that she did not have Petitioners' telephone number and believed that her payments were delivered by Grandmother. While Petitioners deny Mother's claim, they admitted that they refused offers of money for the benefit of the Child from Grandmother. Accordingly, we conclude that the record did not contain clear and convincing evidence to establish that Mother abandoned the Child by failing to remit child support. This conclusion does not require reversal because only one statutory ground is required to support the termination of Mother's rights. Tenn. Code Ann. § 36-1-113(c).

C.

Parental rights may be terminated if the parent has been incarcerated during all *or* part of the four months immediately preceding the filing of the termination petition and has engaged in conduct prior to incarceration that exhibits a wanton disregard for the child's welfare. Tenn. Code Ann. § 36-1-102(1)(A)(iv). To prove this ground, DCS must establish that (1) Mother was incarcerated at the time the termination petition was filed or within the preceding four-month period and that (2) she engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the Child. Tenn. Code Ann. § 36-1-102(1)(A)(iv); *In re Kason C.*, No. M2013-02624-COA-R3-PT, 2014 WL 2768003, *5 (Tenn. Ct. App. June 17, 2014).

Mother claims that the court considered the four months prior to the filing of the petition instead of the four months prior to incarceration in finding termination based upon her wanton disregard for the Child. Petitioners assert that Mother exhibited a wanton disregard for the welfare of the Child based upon her conduct, dating back to February 2014. The Child's Guardian ad Litem further notes that the court may consider any and all conduct preceding the incarceration that occurred at or near the filing of the termination petition.

The record reflects that the court considered the entirety of Mother's past criminal record, as well as her continued use of methamphetamine when not incarcerated in determining that her behavior demonstrated a wanton disregard for the Child's welfare.

This court has held that the court may consider conduct that occurred any time prior to incarceration and is not limited to acts occurring during the four-month period immediately preceding the incarceration. *State of Tenn., Dep't. of Children's Servs. v. Hood*, 338 S.W.3d 917, 926 (Tenn. Ct. App. 2009).

We have held on numerous occasions that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d at 867-68. Here, Mother engaged in criminal behavior and substance abuse, violated her probation, and failed to provide adequate support for the Child prior to her multiple periods of incarceration. Further, she experienced periods of release but ultimately returned to her substance abuse and corresponding criminal behavior, leading to additional periods of incarceration while the Child was cared for by Petitioners in her stead. With these considerations in mind, we affirm the court's finding of abandonment based upon Mother's conduct prior to incarceration.

C.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground of termination, we must consider whether termination was in the best interest of the Child. In making this determination, we are guided by the following non-exhaustive list of factors:

> (i)　In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:
>
> > (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> >
> > (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[5]

---

[5] *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

We acknowledge Mother's current efforts to rehabilitate herself and her desire to maintain a relationship with the Child. However, the fact remains that Mother was still incarcerated at the time of the hearing and made plans to attend an extended rehabilitation program upon her release, leaving her unable to care for the Child for a significant period of time. Tenn. Code Ann. § 36-1-113(i)(1), (7). Further, Mother has experienced periods of release only to return to her past addictions shortly thereafter. Meanwhile, the Child has bonded with her Custodial Parents and is thriving. A change of caretakers at this point in the Child's life would be detrimental to her emotional condition when she has not even seen Mother for several years. Tenn. Code Ann. § 36-1-113(i)(5). The Child should be allowed to achieve permanency and stability in her current home. With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Mother's parental rights was in the best interest of the Child. We affirm the trial court.

## V.    CONCLUSION

The judgment of the trial court is reversed as to the finding of abandonment for failure to remit support. The trial court is affirmed on all other grounds. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Olivia F.

_____
JOHN W. McCLARTY, JUDGE

- 11 -